## MERRITT *v.* CAMERON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 84. Argued November 19, 20, 1890. — Decided December 22, 1890.

The ascertainment and liquidation of duties by a collector of customs, under Rev. Stat. § 2931, is the decision of that officer as to what the duties shall be, made after the measurement, weighing or gauging of the merchandise, its inspection and appraisal, the determination of its dutiable value, and the taking of such other steps as the law may call for; and, so far from this being required to be delayed until the importer chooses to withdraw his goods for consumption, it may take place at any time after the original entry of the merchandise, and should follow, in the regular course of business, as soon after the entry as is convenient, just as in the case of merchandise entered for immediate consumption.

*Westray* v. *United States,* 18 Wall. 322, explained.

The ten days referred to in Rev. Stat. § 2931, within which an importer is allowed to protest against the liquidation of duties, begin to run upon their ascertainment and liquidation.

A construction of a doubtful or ambiguous statute by the Executive Department charged with its execution, in order to be binding upon the courts, must be long continued and unbroken.

THIS was an action at law against the collector of customs for the port of New York, brought to recover duties alleged to have been illegally exacted. Verdict for the plaintiffs, and judgment on the verdict. Defendant sued out this writ of error. The case is stated in the opinion.

*Mr. Solicitor General* for plaintiff in error.

*Mr. Stephen G. Clarke* for defendants in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

This was an action at law by Donald Cameron and Donald E. Cameron, composing the firm of Cameron & Co., importers, against the collector of the port of New York, to recover certain duties alleged to have been illegally exacted on a cargo of sugar and molasses. The only defence that appears to have been pleaded was, that the protest of the importers against such exaction of duties had not been made within ten days from the ascertainment and liquidation of the duties, as required by section 2931 of the Revised Statutes. The case was tried before Judge Shipman and a jury, resulting in a verdict and judgment in favor of the importers for the sum of $1759.84 ; and the collector thereupon sued out a writ of error.

The bill of exceptions, made part of the record, shows the following undisputed facts : On the 26th of July, 1880, Cameron & Co. imported into the United States at the port of New York, from Demerara, by the steamer Restless, a cargo of sugar and molasses, and made entry of the same for warehouse, in bond, under the laws of the United States for the warehousing of merchandise in bond. The estimated duties on the whole cargo amounted to $11,195.11 ; and, pursuant to law, the importers gave a bond to the United States, in the penal sum of $23,000, (about double the amount of the estimated duties,) containing the following condition : "That if, within one year from the said date of original importation, the said goods, wares and merchandise shall be regularly and lawfully withdrawn from public store or bonded warehouse on payment of the legal duties and charges to which they

shall then be subject; or if, after the expiration of one year and within three years from the said date of original importation,.they shall be so withdrawn upon the like payment, with ten per centum added upon the amount of such duties and charges; or if, at any time within three years from the said date of original importation, they shall be so withdrawn for actual export beyond the limits of the United States, then the above obligation to be void; otherwise, to remain in full force."

On the 4th of August, 1880, the importers withdrew the sugar from warehouse for consumption, and paid to the collector the sum of $10,913.55 as the estimated duties thereon, and on account of the duties to be afterwards ascertained and liquidated by him. The appraisement of both the sugar and molasses was made on the 6th of August, and on the 20th of August the collector ascertained and liquidated the duties on the whole cargo, as imported, fixing them at $12,157.76, and stamped upon the entry "Liquidated, and notified importer August 20, 1880." What was meant by "liquidated," as thus used, was, that the entry had been passed regularly through the various divisions of the collector's office, and the duties thereon had been finally ascertained and fixed by the custom officials. "Notified importer" meant that the fact of the liquidation had been stated on a sheet of paper which was hung up in the custom-house for the information of the importer. On the 10th of September, 1880, the importers withdrew the molasses from the warehouse for consumption, and paid to the collector the balance of the duties assessed on the whole cargo, to wit, $1244.21, of which $327.50 was the whole amount of the duty on the molasses, and $916.71 was the balance of the duties assessed on the sugar.

On the 15th of September, 1880, the importers protested in writing against the exaction of the duties on the sugar as excessive and illegal, and on the same day appealed from the decision of the collector to the Secretary of the Treasury. On the 22d of January, 1881, the Secretary affirmed the collector's decision, and on the 19th of April, 1881, the importers brought this suit to recover the duties claimed in their protest.

The evidence introduced by the plaintiffs showed that the excess of duties paid by them, over and above the legal duties, including interest on such over-payments, amounted to $1759.84. It also showed that where merchandise, all of which was covered by one bond, was withdrawn from a warehouse, for consumption, in separate quantities, at different times, the duties paid on the several withdrawals conformed to the estimated duties on the original entry, except that the last or final withdrawal was not paid or settled until it was compared with the warehouse ledger to see whether the correct amount of duties had been paid on the merchandise previously withdrawn. If either too much or too little had been paid, it was noted on the last withdrawal, and a settlement was then made on the basis of the duties, as liquidated. The withdrawal entry of the molasses made September 10, 1880, bore the endorsement in red ink, "To close, $1244.21;" which endorsement meant that that amount of duties, as liquidated, was yet due on the original cargo of merchandise covered by the bond. Evidence was also introduced tending to show that the practice of the custom-house in New York, and the action of the collector in the case of the importation in suit, were in accordance with the following paragraph of Art. 616 of the general regulations under the custom-house and navigation laws of the United States, etc., issued by the Treasury Department, January 1, 1874: "Goods withdrawn for consumption may be taken at average valuation — care being had that on the last withdrawal the entire balance of duties be collected. Should the final withdrawal entry be for export or transportation, and there be any difference between the actual duty and the amount due, to close the sum due on the warehouse entry, the excess, if any, shall be refunded on the last withdrawal for consumption, and the deficiency, if any, collected on amendment to the entry."

At the close of the testimony the plaintiffs moved the court to direct the jury to find a verdict in their favor for the sum of $1759.84; and the defendant moved for a verdict in his favor, on the ground that the protest of the plaintiffs had not been made within ten days after the ascertainment and liqui-

dation of the duties assessed by him as collector, as required by section 2931 of the Revised Statutes. The court denied the defendant's motion, and granted that of the plaintiffs. The jury, thereupon, under the direction of the court, found a verdict for the plaintiffs for the sum above specified; and, judgment having been entered on the verdict, the defendant sued out a writ of error, as before stated.

There is but one question in the case, viz. : Was the protest of the importer's made within the time prescribed by section 2931 of the Revised Statutes? That section reads as follows : ' On the entry of . . . any merchandise, the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid . . . on such merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless . . . the owner, importer, consignee or agent of the merchandise . . . shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well in cases of merchandise entered in bond as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto, and shall, within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the Secretary of the Treasury."

Inasmuch as the ascertainment and liquidation of the duties in this case was, in fact, made on the 20th of August, 1880, and the protest of the importers was not filed until September 15 of the same year, (twenty-six days thereafter,) it would seem to have been clearly too late under the statute quoted. The contention of the defendants in error, however, seems to be that the ascertainment and liquidation of the duties referred to in section 2931, from which the ten days begin to run, should have been made, under the law, at the date of the last or final withdrawal of the merchandise covered by the bond ; and that, as the protest was filed only five days after that date, it was in time. The decision of this court in *Westray* v. *United States*, 18 Wall. 322, 329, and the rulings of the Treas-

ury Department in force at the time the proceedings in this case took place in the custom-house, are relied on as sustaining their view.

It is undisputed that from 1876 to May 2, 1885, (which period embraced the time when the proceedings in this case took place in the custom-house,) the ruling of the Treasury Department was, that a protest was in time if made within ten days from the last or final withdrawal of the merchandise covered by the bond. That ruling appears to have been based upon some expressions found in the opinion of this court delivered by Mr. Justice Strong in *Westray's Case, supra,* decided at October term, 1873. But in that case, as appears from an examination of it, the question as to when the ascertainment and liquidation of the duties should take place was not involved. The case had reference, it is true, to section 14 of the act of June 30, 1864, 13 Stat. 214, c. 171, now embodied in section 2931 of the Revised Statutes, and was a suit by the United States on a bond given by the importers on the entry of goods for warehousing conditioned for the payment of the duties thereafter to be ascertained. The merchandise was withdrawn for consumption before any ascertainment or liquidation of the duties had taken place, upon the payment of the estimated duties. The collector afterwards ascertained and liquidated the duties, and upon the refusal of the importers to pay the difference between the duties as liquidated and the duties as estimated at the date of the entry, suit was brought on the bond, in the name of the United States, to recover that difference. At the trial, the importers offered to prove that the duties as liquidated were excessive and illegal, and that they had never received any notice of the liquidation of them by the collector. It was held, however, that the law did not require the collector to notify the importer of the liquidation of the duties, but that the latter was under obligation to take notice of the collector's settlement of the amount of them; that, as no protest had been made, and no appeal had been taken to the Secretary of the Treasury, the decision of the collector had become final; and that evidence to prove that the duties as liquidated were excessive and illegal was

not admissible. The language of the opinion which the Treasury Department evidently relied upon as authorizing the ruling that the withdrawal of the merchandise from the warehouse for consumption was the liquidation of the entry, referred to in section 2931 of the Revised Statutes, and which is relied upon here to sustain the contention of the defendants in error, is as follows: "The statute, and the Treasury regulations established under it, require that the duties must be ascertained whenever an entry is made, whether it be for warehousing or for withdrawal. In practice, it is true, the liquidation at the time of entry for warehousing is little more than an approximate estimate, and it is mainly for the purpose of determining the amount of the bond to be given. It is made, and the bond is given, before the goods are sent to the warehouse, or even to the appraisers' stores, and before they are weighed, gauged or measured. But the importer enters them and gives the bond the amount of which is regulated by the estimated amount of duties. It is due to his inattention, therefore, if he does not know what that estimate is at the time when it is made. Equally true is it that he has ample means of knowledge of the second or correct liquidation — that made at the time of the withdrawal entry. One of the conditions of his bond is that he pay the amount of duties *to be ascertained* under the laws then existing or thereafter enacted. He is thus informed that there is to be another liquidation, and that the law requires it to be made at the time when he shall make his withdrawal entry, and when the duties are required to be paid."

But in view of the facts in that case the language referred to can hardly be considered as warranting the view of the defendants in error; for the withdrawal of the merchandise in that case occurred before the final liquidation of the duties thereon, and if the importer be required to protest within ten days from that date, it might follow that his protest would have to be made before the actual liquidation had taken place. That is to say; in order to guard against all contingencies he would be required to protest against a future liquidation which might prove to be satisfactory to him in all particulars. Such

a conclusion is not in harmony with the idea and object of the protest. True, as held in *Davies* v. *Miller*, 130 U. S. 284, the clause, " within ten days after the ascertainment and liquidation of the duties," merely fixes the limit beyond which the notice of protest shall not be given, and not the first point of time at which it may be given. That is to say, the notice of protest may be given before the ascertainment and liquidation of the duties, (as was specifically ruled in that case,) but it is not required to be given until some time within ten days after the liquidation.

Indeed, in another part of the same opinion in *Westray's Case*, the learned justice used language entirely inconsistent with the theory of the defendants in error. After stating that the decision of the collector had become final by reason of no protest having been made and no appeal having been taken to the Secretary of the Treasury, he said : "The same considerations lead to the conclusion that the Circuit Court correctly refused to rule that the ten days prescribed by the statute, within which notice of dissatisfaction is required to be given, did not begin to run until notice of the collector's liquidation was given to the plaintiffs in error, or until they had knowledge thereof. The limitation of the right to complain or to appeal commences with the date of liquidation, whenever that is made. No notice is required, but the importer who makes the entries is under obligation to take notice of the collector's settlement of the amount of duties." p. 330. And in the syllabus of the case by the reporter it is said : " The right of the importer to complain or appeal begins with the date of the liquidation, whenever that is made." These quotations abundantly show, we think, that the question as to when the ascertainment and liquidation should take place was not considered by the court at all, further than that it should take place some time after the entry of the merchandise for warehouse.

We find nothing in the statutes or in any of the decisions of this court warranting the construction contended for by the defendants in error, that the ascertainment and liquidation of the duties referred to in section 2931 should be made at the

date of the final withdrawal of the merchandise from the
bonded warehouse. On the contrary, we think the ascertain-
ment and liquidation of the duties on merchandise entered in
bond for warehouse should follow, in the regular course of
business, as soon after the entry as is convenient, just as in
the case of merchandise entered for immediate consumption.
The statutory regulations as to the ascertainment and liqui-
dation of the duties are the same in the one instance as in
the other. The measurement, weighing or gauging of the
merchandise, the inspection and appraisal of it, and the deter-
mination of its dutiable value are required to be proceeded
with exactly the same in each instance. After the ascertain-
ment of those facts in relation to the entry, the collector has
to decide what the duties are in each case. His decision at
that time is the ascertainment and liquidation of the duties
referred to in section 2931; and there would seem to be no
good reason for his delaying that decision in the case of
merchandise entered in bond for warehouse until the con-
venience of the importer shall suggest the removal of the
merchandise from the warehouse.

It is urged, however, that section 2970 of the Revised Stat-
utes, when construed *in pari materia* with section 2931,
leads to the conclusion that the liquidation of the duties on
merchandise entered in bond should be made when the mer-
chandise is withdrawn for consumption. We do not think
so. That section is as follows: "Any merchandise deposited
in bond in any public or private bonded warehouse may be
withdrawn for consumption within one year from the date
of original importation on payment of the duties and charges
to which it may be subject by law at the time of such with-
drawal; and after the expiration of one year from the date
of original importation, and until the expiration of three years
from such date, any merchandise in bond may be withdrawn
for consumption on payment of the duties assessed on the
original entry and charges, and an additional duty of ten per
centum of the amount of such duties and charges."

In our opinion that section was intended to provide for cases
in which a change in the rate of duty had been made by stat-

ute while the merchandise was in the bonded warehouse. *Fabbri* v. *Murphy*, 95 U. S. 191; act of March 14, 1866, 14 Stat. 8, c. 17. The first clause of the section means simply that if there has been a change in the rate of duty after the merchandise has been entered in bond, and the withdrawal of the merchandise takes place afterwards, and within one year from the date of the importation, the duties to be paid are such as are fixed by the law in force at the date of the withdrawal. The second clause of section 2970 provides that if the merchandise remain in the bonded warehouse more than one year it may be withdrawn for consumption at any time within three years upon the payment of the duties and charges assessed upon the original entry, and ten per centum in addition. The phrase "duties assessed on the original entry," etc., evidently means the duties on the original entry as finally ascertained and liquidated, within the meaning of those terms, as used in section 2931. In either case, if the statute changing the rate of duties goes into effect after the liquidation of the original entry, a reliquidation must necessarily take place. The two clauses of the section differ in one respect only, viz., in a ten per cent increase of duties, where the merchandise remains in the warehouse more than one year, and is withdrawn within three years from the date of importation. This construction renders the two sections of the statute harmonious.

Upon a careful examination of the question at issue, we are of opinion that the ascertainment and liquidation of the duties upon merchandise entered in bond for warehouse may take place at any time after the original entry of the merchandise, and that it is not required to be delayed until the importer chooses to withdraw his goods for consumption. The ten days referred to in section 2931, within which the importer is allowed to protest, begin to run upon such ascertainment and liquidation of the duties; and, therefore, the protest in the case at bar was too late.

In arriving at this conclusion we are not unmindful of the fact that the defendants in error made their protest in accordance with the regulations of the Treasury Department in force at that time. A regulation of a department, however, cannot

repeal a statute; neither is a construction of a statute by a department charged with its execution to be held conclusive and binding upon the courts of the country, unless such construction has been continuously in force for a long time. The cases cited go to that extent and no further. In regard to the law under consideration the construction of it by the Treasury Department has not been uniform. The construction contended for by defendants in error first arose in 1876 and lasted only until 1885, since which time the construction has been the same as in this decision. There is no such long and uninterrupted acquiescence in a regulation of a department, or departmental construction of a statute, as will bring the case within the rule announced at an early day in this court, and followed in very many cases, to wit, that in case of a doubtful and ambiguous law the contemporaneous construction of those who have been called upon to carry it into effect is entitled to great respect, and should not be disregarded without the most cogent and persuasive reasons. *Edwards* v. *Darby*, 12 Wheat. 206; *United States* v. *Hill*, 120 U. S. 169, 182; *Robertson* v. *Downing*, 127 U. S. 607, and very many other cases.

*The judgment of the Circuit Court is reversed, and the case is remanded to that court, with directions to set aside the verdict and grant a new trial.*

MR. JUSTICE BREWER dissented from this opinion and judgment, on the ground that the practice of the Department at the time the proceedings in the custom-house took place, and the action of the Secretary of the Treasury in the matter of the protest and appeal, ought to take the case out of what he conceded to be the correct construction of the statute.