## In re GUGGENHEIM SMELTING CO. (three cases).

(Circuit Court of Appeals, Third Circuit.    December 26, 1901.)

### Nos. 35-37.

1. CUSTOMS DUTIES—CLASSIFICATION—BASE BULLION.

"Base bullion," an intermediate or provisional product in the crude reduction of gold and silver ore, formed by smelting the same with a flux of lead ore or silver lead ore, and which is composed of gold, silver, and lead, is not dutiable, under paragraph 166 of the tariff act of 1894, covering "lead in pigs and bars, molten and old refuse lead run into blocks and bars, and old scrap lead fit only to be remanufactured," which includes only pure lead in its different forms; nor is it within the terms of paragraph 165, fixing the duty on lead ores and lead dross and the lead contained in other ores, since it is not an ore; but it should be classified under such paragraph as a nonenumerated article "similar" to the ores containing lead as therein described, within the provisions of section 4, in view of the intention evidenced by section 21, that metals in crude form, unless expressly exempted, should be dutiable.

2. SAME—PROTEST—TIME FOR FILING.

The provision of section 14 of the customs administration act of 1890, that the decision of the collector as to the duty to be paid on imported merchandise shall be final and conclusive unless protest shall be filed "within 10 days after, but not before, such ascertainment and liquidation of duties," is peremptory, and the collector has no power to waive the same, and accept a protest filed after the expiration of the time fixed.

3. SAME—SUFFICIENCY OF PROTEST.

A collector assessed a duty of one cent per pound on "base bullion," under paragraph 166 of the tariff act of 1894, and the importer filed a

protest on the sole ground that the duty should be levied and collected only on the net amount of lead contained in such bullion, the other metals contained therein being on the free list. The article was in fact not dutiable under said paragraph, but under paragraph 165. *Held*, that the protest was insufficient, in failing to point out the provision under which the collector should have acted, and that his decision must therefore stand.

Appeal from the Circuit Court of the United States for the District of New Jersey.

Paul Fuller, for appellant.

Cortland Parker, Jr., and David O. Watkins, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. These are appeals prosecuted by the appellant in three several cases from the decrees therein of the United States circuit court for the district of New Jersey. These decrees sustained the decision of the board of general appraisers, subjecting certain importations of base bullion or crude ores, or metals containing lead, to the duty imposed by paragraph 166 of section 2 of the tariff act of August 27, 1894. Taking these cases separately, we will consider, first, that of the importation by the City of Washington, of June 4, 1897. Paragraph 166, above referred to and held applicable to the importation in question, is as follows:

"Lead in pigs and bars, molten and old refuse lead run into blocks and bars, and old scrap lead fit only to be remanufactured, one cent per pound: provided, that in case any foreign country shall impose an export duty upon lead ore or lead dross or silver ores containing lead, exported to the United States from such country, then the duty upon such ores and lead in pigs and bars, molten and old refuse lead run into blocks and bars, and old scrap lead fit only to be remanufactured, herein provided for when imported from such country, shall remain the same as fixed by the law in force prior to the passage of this act."

The importer protested against the action of the collector, and contended that its importation did not come within the meaning of any term in paragraph 166, but that a duty of three-quarters of a cent should have been imposed and collected on the net amount of the lead contained in the material, as provided for in paragraph 165, which reads as follows:

"Lead ore and lead dross, three-fourths of one cent per pound: provided, that silver ore and all other ores containing lead shall pay a duty of three-fourths of one cent per pound on the lead contained therein, according to sample and assay at the port of entry. The method of sampling and assaying to be that usually adopted for commercial purposes by public sampling works in the United States."

The protest was duly transmitted to the board of general appraisers, pursuant to the statute in such case made and provided. The evidence shows that the importation was from Mexico, and consisted of an article that does not come literally, if in any sense, within the description of either of the quoted paragraphs. It appears to have been originally an ore containing silver and gold, as taken from the mines, to which had been added a lead ore or silver lead ore as a flux in a blast furnace, where they were all smelted, the precious metals being separated by this process from the iron, silica, and some of

the minor metals, and absorbed by the lead. This process results in a product called by some of the witnesses "base bullion." According to the evidence, such a combination is an intermediate or provisional product, and must be subjected to further smelting and refining processes before the lead can be separated from the precious metals with which it is united, and made into the bars or pigs of pure lead, known as such commercially, and fit for being used in the arts and various manufactures of lead. The lead of commerce, other than scrap lead and refuse lead, comes in bars and pigs, and is susceptible of immediate use in the manufacture of articles composed of lead, or into which lead enters. It is pure lead. This is true also of "molten and old refuse lead run into blocks and bars, and old scrap lead fit only to be remanufactured." It is too clear for discussion that paragraph 166 describes accurately this pure lead of commerce, requiring no further process to render it fit for manufacture, and it seems to us also clear that the importation in question is entirely outside of the terms by which dutiable articles are described in said section.

There is great difficulty, also, in applying the language of paragraph 165, above quoted, to this importation. It certainly is not lead ore or lead dross, nor does it seem completely to fill the description of silver ore or other ores containing lead, as the word "ore," in its ordinary signification, is not applicable thereto. That term is used to denote a native product of the mines, containing metal combined with more or less of the impurities that are always found in combination with it mechanically or chemically, and before it has been subjected to any smelting or separating process whatever. The subject of this importation, as we have seen, was the result of a crude and primary smelting process, the result of which was not strictly an ore, and certainly was not a pure lead fit for use and manufacture in the arts.

Inasmuch as there cannot be, and should not be, a tax of doubtful authorization, it has been repeatedly declared by the supreme court that, where the question of the imposition of the tax is one of doubt, the doubt must be resolved in favor of the importers, and that "duties are never imposed on the citizen upon vague or doubtful interpretations." In view of this well-settled principle, it would not be difficult in this case to arrive at the conclusion that, since the importation in question is not described in any of the schedules of the tariff act imposing a duty, it should be free of duty altogether. The specific enumeration, however, of all articles intended to be free of duty, and the provision made by sections 4 and 21 of the act, as well as the fact that the protest of the importer points out paragraph 165 as that under which duty should be paid, bring us to the conclusion that a duty on the importation in question should be imposed under paragraph 165.

Section 4 of the act, which we think is applicable in this case, is as follows:

"Sec. 4. That each and every imported article, not enumerated in this act, which is similar, either in material, quality or texture, or the use to which it may be applied, to any article enumerated in this act as chargeable with duty shall pay the same rate of duty which is levied on the enumerated ar-

ticle which it most resembles in any of the particulars before mentioned; and if any non-enumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable there shall be levied on such non-enumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest rate of duty; and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words 'component material of chief value,' wherever used in this act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its conditions as found in the article. If two or more rates of duty shall be applicable to any imported article, it shall pay duty at the highest of such rates."

Section 21 of the same act provides as follows:

"Sec. 21. That the works of manufacturers engaged in smelting or refining metals, or both smelting and refining, in the United States may be designated as bonded warehouses under such regulations as the secretary of the treasury may prescribe: provided, that such manufacturers shall first give satisfactory bonds to the secretary of the treasury. Ores or metals in any crude form requiring smelting or refining to make them readily available in the arts, imported into the United States to be smelted or refined and intended to be exported in a refined but unmanufactured state, shall, under such rules as the secretary of the treasury may prescribe and under the direction of the proper officer, be removed in original packages or in bulk from the vessel or other vehicle on which they have been imported, or from the bonded warehouse in which the same may be, into the bonded warehouse in which such smelting or refining, or both, may be carried on for the purpose of being smelted or refined, or both, without payment of duties thereon, and may there be smelted or refined, together with other metals of home or foreign productions: provided, that each day a quantity of refined metal equal to the amount of imported metals smelted or refined that day shall be set aside, and such metals so set aside shall not be taken from said works except for transportation to another bonded warehouse or for exportation, * * * or it may be removed under such regulations as the secretary of the treasury may prescribe, upon entry and payment of duties, for domestic consumption."

The intention of congress, therefore, as evidenced by the general scheme of the tariff act, being that no article not specially enumerated in the free list should be admitted into the country free of duty, we feel compelled to apply the so-called "similar" provisions of section 4 to the importation here in question.

The designation, in section 21, of "ores or metals in any crude form requiring smelting or refining to make them readily available in the arts," we think clearly includes the importation here in question. Though it is used in said section in connection with provisions authorizing the establishment of private smelting works, as bonded warehouses, in which such crude metals or ores may be smelted, and the refined metal obtained therefrom under proper supervision for the payment of duty thereon, and not as per se describing a dutiable article, yet it makes effective the provisions of section 4, taken in connection therewith, and renders it more readily applicable to the case in hand. We think, therefore, that the importation was a crude metal or ore "similar" in material to the silver ore and other ores containing lead described in paragraph 165. The duty on refined lead extracted therefrom can be easily ascertained under the provisions of

section 21 and the treasury regulations authorized by and issued in pursuance thereof.

The Case of Balbach Smelting & Refining Co., 81 Fed. 950, much relied upon by the counsel for the United States, decided in the United States circuit court for the district of New Jersey in the year 1897, differs from the case in hand, in that, to quote the language of the court, "all the parties agree that the imported metal is dutiable under paragraph 166 of the act of August 27, 1894, and therefore the only question presented for the consideration of the court is whether, under paragraph 166 and section 21 of the act of August 27, 1894, and treasury regulations, a duty of one cent a pound shall be assessed upon the gross weight at time of importation, or upon the quantity of refined lead which shall be obtained from the imported metal."

In the case we are now considering, however, the protest of the importer denies that the importation was dutiable under paragraph 166, but asserts that it is dutiable under paragraph 165. We think, therefore, that the appraisers and the court below, who affirmed their decision, erred in not imposing the tax of three-quarters of a cent per pound, provided for in paragraph 165, instead of the duty of one cent per pound, which was imposed upon the gross weight of the base bullion.

The order and decree of the court below, affirming the decision of the general appraisers in this case, is reversed, with directions to enter a decree classifying the importation here in question under paragraph 165 of Schedule C of the tariff act of August 27, 1894.

The second case to be considered is an appeal similar to the one just considered. The character of the goods, the titles, and parties in both cases are the same. The importation was made in the ship Saratoga, May 12, 1896. It differs from the case just considered, in that the protest was not filed within the statutory time. Section 14 of the act of June 10, 1890, provides that the decision of the collector "shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee or agent of such merchandise * * * shall within ten days after, but not before, such ascertainment and liquidation of duties, * * * give notice in writing to the collector, setting forth therein distinctly and specifically and in respect to each entry or payment the reasons for his objection thereto." The counsel for the importer, admitting that the protest was not filed within the period specified in the statute, contends that the protest was, nevertheless, accepted, and that the collector waived the right, in the presence of a treasury agent, to reject the same. In view of the peremptory requirement of the statute just quoted from, in regard to the finality of the collector's decision, we do not think that it was in the competence of the collector to waive the same. For this reason, therefore, we think the decision of the collector in this case is final, and that the decision of the appraisers, as to the duties to be levied, and the decree of the court below, so far as it sustained the levying of such duties, should be affirmed.

The only other case as to which any record is before us is that of the importation by the Saratoga, of July 6, 1896. In this case the protest was confined to paragraph 166, and was made on the ground

that a duty of one cent per pound should be levied and collected only on the net amount of lead, and that the gold, silver, copper, and antimony included in the merchandise should be admitted free of duty, in accordance with the provisions of certain paragraphs of the free list. The contention made for the importer in this case is that though the protest failed to point out any other provision of the tariff act than paragraph 166, under which duties should be levied, yet, if the court were of opinion that such duties could not be levied at all under that paragraph or any other, the rule that the importer must point out the provisions under which the collector should have acted would not apply, and the decision of the collector should be reversed, and the merchandise admitted free of duty.

The counsel for the importer in their brief in this case say: "It is true that, if any duty should have been paid, the importer must point out the provisions under which the collector should have acted. Should he fail to do so, the action of the collector must be affirmed." In view of our decision in the case of the Washington, that the provisions of paragraph 165, if properly appealed to, would apply, the contention that there is no applicable provision under which the collector could have collected duty cannot be sustained. We have already, in the case of the Washington, stated that the terms of paragraph 166 are not applicable to the merchandise in question, either in whole or in part, and we cannot, therefore, see how the provisions of said paragraph can be made applicable to the net amount of lead actually contained in the base bullion, when separated from the precious and other metals with which it is in combination. In the absence of any reference to paragraph 165, or any other provision of the law, we are constrained to allow the decision of the collector to stand, and, for the reasons stated and no others, the decision of the court below, sustaining the action of the collector in levying the duty of one cent per pound upon the gross weight of this merchandise under paragraph 166, is affirmed.