[No. 7837.      Decided April 9, 1909.]

NORTH AMERICAN COMMERCIAL COMPANY, *Respondent*, v.
NORTH AMERICAN TRANSPORTATION AND TRADING
COMPANY, *Appellant*.[1]

PRINCIPAL AND AGENT—SALES BY AGENT—WARRANTY—AUTHORITY OF AGENT—EVIDENCE—SUFFICIENCY—IMPLIED WARRANTY OF TITLE. An agent had authority to warrant a cargo of coal as free from incumbrances (including an unpaid duty) where it appears that a representative of the company testified that he had absolute authority to dispose of the coal, that he instructed the agent to make the best settlement possible, had wired him that the duty was paid, and the company failed, after opportunity, to show that the representative did not have the authority claimed by him; especially where it had constructive possession, which raises an implication of warranty of title.

CUSTOMS DUTIES—REBATE—EXPIRATION OF TIME LIMIT FOR REBATE —STATUTES—CONSTRUCTION. Foreign coal discharged in October, 1903, from a disabled vessel at a port other than her destination, and kept in the custody and control of the government, is not relieved from the payment of duty by Act of Cong. Jan. 15, 1903, (32 Stat. 773) which provides for a full rebate of duties on coal for the period of one year, where no entry of the coal had been made and no rebate made by the collector until after said statute had expired by limitation; and the same was subject to duty when sold on March 4th, 1904.

SALES—WARRANTY AGAINST INCUMBRANCES—PAYMENT OF DUTY— FAILURE OF VENDEE TO GIVE NOTICE. Where the purchaser of foreign coal was not notified within ten days of the reliquidation of duty

[1]Reported in 100 Pac. 985.

on the coal, and the statute made the decision of the collector final unless appeal was taken in ten days, the purchaser's failure to notify the vendor of the lien for the duty within time to enable the vendor to take an appeal and contest the duty will not deprive the purchaser of his right to recover the duty which he was required by the government to pay, under the vendor's warranty that the coal was free from incumbrances.

Appeal from a judgment of the superior court for King county, Tallman, J., entered January 21, 1908, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Bausman & Kelleher*, for appellant.

*Leander T. Turner* and *Frank A. Steele*, for respondent.

Gose, J.—The appellant was the defendant below. The complaint, in substance, alleges the corporate capacity of both the appellant and the respondent; that on the 4th day of March, 1904, the appellant sold to respondent a quantity of coal, which was then lying upon the respondent's dock at Dutch Harbor, in the district of Alaska; that the appellant warranted that the coal was free and clear of all liens and incumbrances; that the respondent paid the appellant the purchase price of the coal; that such coal had been imported by the appellant, and was, at the time of the sale, subject to the payment of an import duty; that after the purchase, the respondent was required to make entry of the coal, and on the 5th day of September, 1904, it was compelled by the United States, as a condition precedent to obtaining possession of the coal, to pay the sum of $631.28 as duty thereon; that at the time of the purchase the respondent did not know that the coal was subject to the payment of duty, and relied upon the appellant's warranty that it was clear and free of incumbrance. The answer joined issue upon all the averments of the complaint, except that it admitted the payment of the duty by the respondent; that the coal was foreign, and

the corporate capacity of both the appellant and the respondent. The case was tried to the court, resulting in a judgment in favor of the respondent for the amount claimed. From this judgment, the appeal is prosecuted.

As we have stated, the pleadings admit that the coal was foreign, and that, before the respondent could obtain possession of the coal, it was required to pay the government, as an import duty on the coal, the amount for which the judgment was entered. We gather the following facts from the evidence: In the fall of 1903, the appellant shipped a cargo of British Columbia coal on board the steamship Meteor from Seattle, consigned to itself at Nome, Alaska; that on October 26, 1903, the vessel, being disabled, was towed into Dutch Harbor, Alaska, and discharged a quantity of sacked coal which later it sold to the respondent; that the appellant did not make entry of the coal; that the respondent was required by the government to enter it for consumption and pay the duty, before it could obtain possession; that after the sale, the deputy collector at Dutch Harbor rebated the duty, under an act of Congress which expired by limitation January 15, 1904; that the collector, at Juneau, on July 2, 1904, reliquidated the entry, and charged the coal with the payment of a duty; that on September 5, following, the respondent received notice of such reliquidation from the collector, paid the duty, and at once forwarded its protest to such collector, who in turn forwarded it to the board of general appraisers at New York, where the appeal was dismissed because it was not taken within ten days after the reliquidation by the collector. The evidence further shows that one Isted, a resident of Seattle representing the appellant, directed one Baggs, at San Francisco, to sell the coal; that he sold it to the respondent at San Francisco, California, and warranted to it that it was free from incumbrances; that at the time of such purchase, the respondent did not know that it was subject to the payment of duty, but relied upon the representations and warranty of the agent Baggs.

The appellant assigns eleven errors, which in its brief it argues under two principal heads: (1) It contends that the sale was without an express warranty, and that Baggs did not have authority to warrant; (2) that even if there was a warranty against incumbrances, the respondent cannot recover in this action for the reasons (1) that the appellant was not notified of the imposition of the duty, and (2) because if notice had been given, the appellant could have defeated its collection.

Considering these questions in the order stated, we have seen that Baggs expressly warranted the coal to be free from incumbrance. We will therefore consider whether Baggs had legal authority to warrant. As we have said, his authority was derived from one Isted, the agent of the appellant. The agent Isted was offered as a witness for the appellant, and interrogated respecting the sale of the coal as follows:

"Q. Did you have charge of that cargo, handling of that cargo, and adjusting it? A. I disposed of it for the account of the North American people. Q. And you disposed of it for the North American Trading & Transportation Company? A. Yes, sir. Q. Representing that company, did you authorize Mr. Baggs to make a sale of that coal? A. Yes, sir."

Whereupon the following letter from Isted was admitted in evidence:

"March 4, 1904.
"Montgomery Baggs, Esq., San Francisco, Cal.
"Dear Mr. Baggs: Your letters of the 9th and 11th were duly received. After reading your letter of the 9th regarding the coal and as Mr. Snowdon gave me absolute authority to dispose of this I think you had better make the best settlement you possibly can for the N. A. T. & T. Co. I think, however, the remarks as to the loss of two pounds per sack is small particularly as the N. A. C. takes half the bags which were extra heavy and worth much more than two pounds of coal. However, as I said before, you better do the best you can. Inasmuch as Mr. Snowdon is now in Chicago and Bausman on his way to Los Angeles, I wired to arrange a bill of

sale as he holds the North American T. & T. Company's power of attorney and that is what we require."

Isted had theretofore wired Baggs in relation to the transaction: "Duty has been paid." It will be observed that Isted states that Mr. Snowdon, who the evidence shows was at the time the secretary of the appellant corporation, had given him absolute authority to dispose of the coal; that he directed Baggs to make the best settlement he could. Both Baggs and Isted were engaged in marine insurance. The appellant had the opportunity to show that Isted did not have the authority which he claimed and which he delegated to Baggs, but did not do so. We are therefore persuaded that Baggs had express authority to warrant the coal to be free from incumbrance. Moreover, the coal was in the constructive possession of the appellant at the time of sale, and the law, therefore, raises an implication of warranty of title. 15 Am. & Eng. Ency. Law (2d ed.), pp. 1216-17; *Shattuck v. Green*, 104 Mass. 42.

(2) We will consider these propositions in the inverse order of their statement. The coal was subject to the duty which the respondent paid. Act of Congress of July 24, 1897 (30 Stats. at Large, 190). The appellant argues that this act was suspended by the law of January 15, 1903 (32 Stats. at Large, 773), which provides that the secretary of the treasury shall "make full rebate of duties imposed by law" on all coal imported from foreign countries "for the period of one year from and after the passage of this act." The respondent states his position on this question as follows:

"The point to be observed is that, upon discharge of the cargo, it goes into the custody of the. government, there to remain until either it is entered and duties paid or it is reliquidated. The situation is precisely the same as though the cargo had gone into a bonded warehouse upon original importation."

It will be observed that the cargo had not reached the port to which it had been consigned, but that the vessel had been

disabled and towed into harbor where she had discharged a
part of her cargo. Such cargo was thereafter under the con-
trol and supervision of the government. U. S. Rev. Stats.,
paragraphs 2891-2894. As we have said, the appellant had
made no entry of the coal at the time of sale. The rebate
statute had then expired by limitation. Speaking to this
question, it is said in *Hartranft v. Oliver*, 125 U. S. 525,
8 Sup. Ct. 958, 31 L. Ed. 813:

"In other words, goods imported before the act took effect,
if kept in the custody and control of the government, are
to be charged with duties according to the law in force when
they are entered for consumption; that is, when passed over
to the control of the importer or owner. The place in which
the goods are thus kept is not the essential fact, but the cus-
tody of the government, and the consequent exclusion of con-
trol over them by the owner."

Again, in *Merritt v. Cameron*, 137 U. S. 542, 11 Sup. Ct.
174, 34 L. Ed. 772, at page 551, it is said:

"The first clause of the section means simply that, if there
has been no change in the rate of duty after the merchandise
has been entered in bond, and the withdrawal of the merchan-
dise takes place afterwards within one year from the date of
the importation, the duties to be paid are such as are fixed
by the law in force at the date of withdrawal."

It follows from the rule announced in these cases, that the
coal when sold was subject to a lien for the duty which the
respondent paid. This being true, the purchaser could re-
deem from the lien and recover from the vendor the sum paid
for redemption. *Ranney v. Meisenheimer*, 61 Mo. App. 434;
*Sargent v. Currier*, 49 N. H. 310, 6 Am. Rep. 524; *Cahill v.
Smith*, 101 N. Y. 355; 15 Am. & Eng. Ency. Law (2d ed.),
pp. 1252-3. The cases cited by the appellant, which it as-
serts announce that the rebate statute applied, all follow the
rule announced in the case of *Meredith v. United States*, 13
Peters 486, 10 L. Ed. 260. The principal question in that
case was whether the duty acts created a personal indebted-
ness in favor of the government and against the importer.

The court held that they did; and while it is also held that the duty was collectible by the government at the time the goods entered the port, yet the cases from the same court from which we have quoted are later expressions of the court's views, and we are content to follow them.

We will next consider the question of the failure of the respondent to give the appellant notice that it had been required to pay the duty, so that it might have the opportunity to review the action of the collector before the board of general appraisers and the circuit court having jurisdiction of the cause. Section 14, p. 137, 26 Stats. at Large, provides that, "The decision of the collector as to the rate and amount of duties chargeable upon imported merchandise," shall be final and conclusive, unless the owner shall, within ten days from the liquidation of the duty, give written notice to the collector setting forth his objections to the same. The time fixed in this statute is jurisdictional. *In re Guggenheim Smelting Co.*, 112 Fed. 517.

The coal was reliquidated at Juneau, Alaska, July 2, 1904, and the respondent did not receive notice of such action until September 5, following. The time within which to appeal to the board of general appraisers at New York had long since expired. However, it filed its protest with the collector as required by law, the same was transmitted to the board, and its appeal dismissed on the ground that it had not been taken within the time limited by law. It is true that the law gave it the right of appeal to the circuit court, but the same jurisdictional question would have precluded a review by the court.

The respondent cannot, therefore, be penalized for a failure to do an impossible thing. As we have seen, the primary obligation to pay the duty was on the appellant. Under the circumstances, the decision of the collector will be considered as conclusive of appellants liability to reimburse the respondent for the sum it was required to pay.

For the reasons stated, the judgment will be affirmed.

CHADWICK, FULLERTON, MOUNT, CROW, and DUNBAR, JJ., concur.

MORRIS and PARKER, JJ., took no part.