UNITED STATES *v.* C. J. TOWER & SONS (No. 4559)[1]

United States Court of Customs and Patent Appeals, May 20, 1947

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue* and *Richard E. FitzGibbon*, special attorneys, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[1] C. A. D. 365.

20

[Oral argument April 3, 1947, by Mr. Donohue and Mr. Schwartz]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and
O'CONNELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This appeal is from a judgment of the United States Customs Court, First Division, C. D. 1023, sustaining the protest of appellee (customs brokers) against the collector's classification of imported merchandise invoiced as "Crude Artificial Abrasive (#38 Alundum)" as "refined bauxite" under the provisions of paragraph 6 of the Tariff Act of 1930 and assessed for duty by him at the rate of one-half of 1 cent per pound. It was claimed ·in the protest that the merchandise was properly classifiable as a "crude artificial abrasive" and free of duty as such under the provisions of paragraph 1672 of the said act. By amendment to the protest it was further claimed that such assessment of duty constituted a change of long-continued administrative practice.

The goods were exported by the Norton Company of Chippawaw, Ontario, Canada, to its parent Norton Company of Worcester, Mass., and entered by appellee at the port of Buffalo, N. Y.

The facts in the case are not in dispute. The decisive point at issue is whether or not the imported merchandise, which is a new pellet form of aluminum oxide, belongs to a class of abrasives known as alundum at the time of the passage of the tariff act.

It appears that the Canadian company manufactures silicon carbon abrasives and aluminous abrasives and that the term "Alundum" is the trade-name applied by it to the latter. There are three kinds of the product which are known as Regular Alundum, No. 57 Alundum, and No. 38 Alundum, which is the purest form. No. "38 alundum" is produced in both lump and pellet form, the latter being known as "E-163" or "No. 38 alundum, low soda." The pellet form, while it existed experimentally prior to June 17, 1930 (the effective date of the tariff act), was not produced commercially nor imported into the United States until 1939 or 1940. No. "38 alundum" in lump form has been exported by the Canadian company to its parent company at Worcester, Mass., since at least 1926 and was either in brown or white color. No. "38 alundum" in pellets is always white in color.

It appears that "alundum 38" is produced in an electric furnace which has a water-cooled shell, from a fusion of Bayer process alumina, which is more than 99 per centum pure, and a small added amount of petroleum coke. The fusion is accomplished by direct electric arc means and the liquid then cooled. If permitted to cool in the furnace the lump form of "38 alundum" is produced. In order to obtain the pellet form after the mixture has been fused, it is poured into a high velocity stream of cold water.

It is conceded by appellee and the record shows that the chief use of the imported merchandise has been and is for refractory purposes in

coating the wires of radio tubes where they enter the sockets. It also appears that it has a limited use as a very fine abrasive material.

Before the imported merchandise is fit for use it is milled, in the plant of the company at Worcester, down to material designated as "38 Alundum flours, referred to as 38500 and 39800 acid treated." The former numbered coarser flour consists of particle sizes of 19 microns and the latter, which is finer, consists of particle sizes of 7 microns. A micron is a thousandth of a millimeter.

Appellee contends that the imported merchandise is of a class known and recognized as an abrasive at the time of the passage of the tariff act; that crude artificial abrasives under the provisions of paragraph 1672 is a use provision; and that it is immaterial that the imported goods have been chiefly used for refractory rather than abrasive purposes since its production in commercial quantities, as aforesaid.

Appellant contends that the imported merchandise is refined bauxite, is not a crude substance, and does not belong to that class of alundum chiefly used for abrasives at the time of the enactment of the tariff act.

In view of our conclusion it is not necessary to determine whether the imported article is refined bauxite or whether it is crude because under the use provision interpretation invoked by appellee, if it has not been shown that its chief use since it has been in production in commercial quantities is as an abrasive, it cannot be placed in the class of alundum abrasives known and recognized when the tariff act became effective. No. "38 alundum" in pellet form was not then an article of commerce. It was not known except experimentally, but even if it had been known and recognized prior to or at the effective date of the tariff act, it is clear to us, from the record here disclosing its chief use as a refractory, that it could not have been classified under the provisions of paragraph 1672.

We think that our holding in the case of *United States* v. *C. J. Tower & Sons*, 26 C. C. P. A. (Customs) 1, T. D. 49534, is controlling here. In that case the imported merchandise consisted of printing paper invoiced as "67 rolls Std. Newsprint 15″ White." It was classified by the collector as uncoated printing paper under paragraph 1401 of the Tariff Act of 1930 and claimed to be free of duty as standard newsprint paper under paragraph 1772 of the said act. There was no showing there that printing paper 15 inches wide was chiefly used at any time for printing newspapers. There was, however, some testimony that paper such as that imported was used for other printing purposes. We held that the imported paper was not of the class chiefly used for printing newspapers on and prior to the date of the passage of the tariff act and reversed the judgment of the trial court.

In this case the record shows that merchandise such as that in-

volved here was never at any time chiefly used as an abrasive and, therefore, it cannot properly be considered as belonging to the class of alundum abrasives which were known and recognized as such before and at the time of the passage of the tariff act.

The trial court did not pass on appellee's alternative claim with respect to long-continued administrative practice, stating that in view of its conclusion it was not found to be necessary. The briefs of the parties contain nothing concerning that claim. We have examined the record with care and find nothing therein to justify a holding that there was a change of long-continued administrative practice as claimed by appellee. Such practice must appear to have been known, long-continued, uniform and general. No such showing appears in the record and we know of no such long-continued administrative practice as claimed by appellee. *The Dollar Savings Bank* v. *United States*, 86 U. S. 227; *Merritt* v. *Cameron*, 137 U. S. 542; *United States et al.* v. *Missouri Pacific Railroad Co.*, 278 U. S. 269.

For the reasons hereinbefore given the judgment of the United States Customs Court is *reversed* and the cause *remanded* for further proceedings not inconsistent herewith.