## FABBRI *v.* MURPHY.

Certain goods were imported in November, 1869, and stored in a bonded warehouse until March 20, 1871, when they were withdrawn for consumption. *Held,* that, having so remained in such warehouse, they were, under the act of March 14, 1866 (14 Stat. 8), subject to the additional duty of ten ner cent thereby imposed.

ERROR to the Circuit Court of the United States for the Southern District of New York.

In November, 1869, Fabbri & Chauncey imported from Manilla into New York certain sugar, which, on the seventeenth day of that month, was stored in a United States bonded warehouse, where it remained until March 20, 1871, when it was withdrawn for consumption. The duty at the latter date amounted to $34,360.50, gold, to which ten per cent was added by the defendant Murphy, then collector of New York, as the sugar had remained in the bonded warehouse more than one year. The additional ten per cent was paid under protest, and an appeal taken from the collector's liquidation and decision. The Secretary of the Treasury having affirmed that decision, this suit was seasonably brought by the plaintiffs to recover the ten per cent, with interest thereon from the time of its payment. At the trial, they requested the court to charge, in substance, that the additional ten per cent was illegally imposed. This request was denied, and the jury told that, upon the uncontradicted evidence, the defendant was entitled to a verdict, which was rendered accordingly. To the instruction given and to those refused the plaintiffs duly excepted, and sued out this writ.

*Mr. Grosvenor P. Lowrey* for the plaintiffs in error.

*Mr. Assistant Attorney-General Smith, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Goods imported here from a foreign country may be entered for consumption or for warehousing; but, when entered for consumption, the requirement is that the duties shall be paid, or be secured to be paid, before a permit for landing the goods is granted. 1 Stat., sect. 62, p. 673.

Importations of the kind are required to be landed in open day; and the collection act provides that the goods shall not be landed or delivered from the ship without a permit from the collector. Examination of the entry is usually made by the entry-clerk; and, if found correct, the collector then proceeds to estimate the duties, as shown by the invoice value and quantity, and if the estimated amount of the duties is paid, or secured to be paid, as required by law, the collector is then authorized to grant a permit for the discharge and landing of the cargo. *Kimball* v. *Collector*, 10 Wall. 436.

Merchandise, if duly imported, with certain exceptions not necessary to be noticed, may be entered for warehousing without paying the duties at the time of the entry, in which event the goods are delivered into the possession of the collector, and are deposited, at the option of the owner, importer, consignee, or agent, at his expense, in any public warehouse or other place provided by law for the storage of such property.

Both the duties and expenses are required to be ascertained at the time of the entry of the goods for warehousing, and the duties and charges are to be secured by the bond of the owner, importer, or consignee, with surety or sureties to the satisfaction of the collector, the goods being at all times subject to the orders of the depositor, upon the payment of the proper duties and expenses. *United States* v. *Benson*, 2 Cliff. 520.

By the record, it appears that the plaintiffs, in the month of November, 1869, imported from Manilla one million nine hundred and sixty-three thousand four hundred and fifty pounds of sugar; that on the 17th of the same month they made entry of the whole amount for warehouse, and that the same were duly stored in a public bonded warehouse, situated in the city of New York, as appears from the warehouse entry and the return of the weigher; that the sugars were classified on the warehouse entry by the appraiser as not above No. 12, Dutch standard, in color; and that the duties, on the 17th of January following, were assessed at three cents a pound, under the then existing tariff. On the 20th of January, 1871, the plaintiffs made a withdrawal entry of the sugars for consumption, which throughout the whole period, from the time they were stored to the date of the withdrawal entry, had remained in the public

bonded warehouse. Prior to that time, to wit, on the 16th of the same month, the sugars were re-classified by the appraiser, under the act of Dec. 22, 1870, as appears by a memorandum on the withdrawal entry for consumption, as not above No. 7, Dutch standard, in color, and the rate of entry was noted by the appraiser on the entry at $1\frac{3}{4}$ cents per pound.

Apart from that, it also appears that, on the 20th of March in the same year, the duties on the sugars were liquidated by the collector at the reduced rate noted on the withdrawal entry, making the amount $34,360.50, with an additional duty of ten per cent on the previous duty imposed under the act of the 14th of March, 1866, the goods imported having remained in the public bonded warehouse for a longer period than one year.

By that act, all goods, wares, and merchandise remaining in warehouse under bond on the first day of May of that year might be withdrawn for consumption within one year from the date of original importation, on payment of the duties and charges to which they were subject by law at the time of such withdrawal. 14 Stat. 8.

Ten per cent on the original duty amounts to $3,436.05, and the two sums amount to $ 37,796.55.

Payment of the original duty was made without objection; but the record shows that the plaintiffs paid the additional duty of ten per cent under protest, and instituted the present suit to recover back the amount. Proper notice in writing was given by the plaintiffs to the collector, that they were dissatisfied with his decision in the final liquidation of the duties; and on the day the payment was made they appealed from his decision to the Secretary of the Treasury, who subsequently affirmed the decision of the collector.

Interest at six per cent on the amount of the additional duty is $593.27, making the additional duty, adding the interest to the date of the judgment, $4,029.30.

All of these facts were proved by the plaintiffs, the defendant offering no testimony, and the court directed a verdict for the defendant. Exceptions were filed by the plaintiffs; and they sued out a writ of error, and removed the cause into this court.

Errors are assigned as follows: 1. That the court erred in

refusing to charge the jury that, if they found that the sugars were not above No. 7, Dutch standard, in color, and were in public warehouse on Dec. 31, 1870, and so continued until March 20, 1871, and were on that day entered to be withdrawn for consumption, the sugars were not subject to any other duty than at the rate of 1¾ cents per pound. 2. That the court erred in refusing to instruct the jury that, if they found the facts to be as stated in the preceding assignment of error, the collector illegally exacted the additional duty of ten per cent. 3. That the court erred in refusing to instruct the jury that the plaintiffs were entitled to recover the amount of the additional duty of ten per cent exacted by the collector, with interest.

Import duties upon the sugars at the rate of 1¾ cents per pound, it is conceded, were properly exacted by the collector; and the record shows that the duties were finally liquidated at that rate before the sugars were withdrawn from the public bonded warehouse for consumption, and that the plaintiffs paid the whole of that amount without protest. Both parties agree that goods deposited in a public warehouse, and being there on the first day of May, 1866, might be withdrawn for consumption within one year from the date of the original importation, on payment of the duties and charges to which they were subject by law at the time of such withdrawal.

Imported, as the sugars in question were, on the 17th of November, 1869, it is clear that the plaintiffs might have withdrawn the same for consumption on payment of the duties to which they were subject by law, if withdrawn within one year from the time the importation was made; but they did not make any such entry until the 20th of the following March, more than four months after the year allowed for the purpose had expired.

Such depositors of imported goods might withdraw the same for consumption within one year from the date of importation without paying any thing beyond the duties and charges; but the privilege extended to depositors did not stop there, as appears by what follows in the same section. Instead of that, the provision is, that, after the expiration of one year from the date of original importation, and until the expiration of three years from said date, any goods, wares, or merchandise in bond

as aforesaid may be withdrawn for consumption on payment of the duties assessed on the original entry and charges, and an additional duty of ten per cent of the amount of such duties and charges.

Pursuant to that provision in the act of the 14th of March, 1866, the collector exacted the additional duty which is the subject of contest under the present writ of error.

Certain intimations are made by the parties respectively that the computation of the collector is erroneous ; but the court is of the opinion that it is exactly correct, and that it does not lie with the plaintiffs to call it in question, as they allege in their declaration that the additional duty exacted by the collector is ten per cent of the duties properly assessed on the merchandise.

Responsive to that theory of the defence, the plaintiffs insist that the first clause of the twenty-sixth section of the act of the 14th of July, 1870, 16 Stat. 269, supersedes the provision invoked by the defendant, and that it gave to them the right to withdraw the sugars for consumption without paying any thing except the original duties and charges, as finally liquidated and noted in the withdrawal entry.

Imported goods, wares, and merchandise, the section provides, which may be in the public stores or bonded warehouses on the day and year the act shall take effect, shall be subjected to no other duty upon the entry thereof for consumption than if the same were imported after that day. When that act was passed, the sugars imported by the plaintiffs had been in the public warehouse nearly eight months, and the sugars could remain there something more than four months longer before the year would have expired during which the owner, importer, or consignee might withdraw the same for consumption under the prior act, on payment of the liquidated duties and charges.

Suppose the new act applies to the case before the court, which is not admitted, still it is clear that it would not supersede the defence arising under the prior act, as four months remained during which the plaintiff might have withdrawn the goods for consumption without being subjected to any additional duty under the prior act, and for the further reason, that the

prior act is not repealed by the new act under which the plaintiffs claim, noi is the provision of the new act repugnant to that of the prior act. Nothing like inconsistency appears in the provisions of the two acts at the passage of the latter, as applied to the case before the court, as the plaintiffs might under either act have withdrawn their goods deposited in the public warehouse at any time within four months subsequent to the passage of the new act, on payment of the duties and charges finally liquidated by the collector, and noted by the appraiser on the withdrawal entry.

Authorities to show that there must be a positive repugnancy between the provisions of the new law and the old, to work a repeal of the old law by implication, and that even then the old law is only repealed to the extent of the repugnancy, are very numerous and decisive. *Wood* v. *United States*, 16 Pet. 342.

Repeal by implication, upon the ground that the subsequent provision upon the same subject is repugnant to the prior law, is not favored in any case, and must always meet with disfavor where the attempt is made to apply the principle in the construction of the revenue laws of the United States.

Acts of Congress of the kind are often very complex in their provisions, in order to enable those charged with their execution to protect the treasury against the constant attempts of importers to evade the payment of new duties or increased taxation. New regulations often become necessary to enable the officers of the customs to defeat such designs; and the rule is, that in such cases there ought to be a manifest and irreconcilable repugnancy to warrant the conclusion that the old law is abrogated, or that the new law was intended to supersede the antecedent provision. *Aldridge* v. *Williams*, 3 How. 9; *The Distilled Spirits*, 11 Wall. 356.

Concede the theory of the plaintiffs to be correct, and it would follow that the sugars imported by the plaintiffs might remain in the public warehouse for an indefinite period without paying the liquidated duties, and without subjecting the importer, owner, or consignee to any additional charge when he should withdraw the same for consumption. Congress, it is believed, never intended that any such result should follow,

as it would be contrary to the policy of the government, as shown in all the acts of Congress establishing and regulating the warehousing system.

Authority to warehouse certain imported goods was granted by Congress at a very early period in our history. 1 Stat. 673. Option was given to the importers of teas, by the sixty-second section of the original collection act, either to secure the duties, as in case of other importations, or to give bond to the collector of the district where the teas were landed in double the amount of the duties, with condition for the payment of the same in two years from the date of the bond. Whenever the importer elected to give the bond, the requirement was that the goods should be deposited, at the expense of the importer, in one or more storehouses therein described. Regulations to the same effect were subsequently enacted in respect to the importation of wines and distilled spirits. 2 id. 469. Duties under that act were to be paid in twelve calendar months from the date of the bond, and the collector was required to accept the bond without surety.

Corresponding regulations were made at a later period in respect to wool and the manufactures of wool, or manufactures of which wool was a component part. 4 Id. 591. Imported goods of the kind might be placed in public stores under bond, subject to the payment of customary storage and charges, and to the payment of interest at the rate of six per cent per annum while so stored; and the provision was, that the duties on the articles so stored should be paid, one-half in three months and the other half in six months from the date of importation.

Duties of import were required by the subsequent tariff act to be paid in cash; and it was provided, in case of failure to pay the duties as required, that the collector should take possession of the same, and that the goods should be deposited in the public stores, there to be kept with due and reasonable care, at the charge and risk of the owner, importer, consignee, or agent. Goods of the kind might remain in public store for sixty days; but, if they remained beyond that period without payment of the duties, they were required to be appraised and sold by the collector. 5 id. 562. Throughout those provisions, the plain inference is that Congress did not regard the importation as

complete while the goods remained in the custody of the proper officers, of the customs.

At a still later period, Congress passed the act to establish a warehousing system, in which it is provided that, in case any goods, wares, or merchandise deposited in public stores shall remain in the same beyond one year without payment of the duties and charges thereon, the same shall be appraised . . . and sold by the collector at public auction, under the regulations therein prescribed. 9 id. 53, 399.

Alterations were made in the warehousing system by a subsequent act, which provided that goods remaining in warehouse, and goods subsequently entered for warehousing under bond, may continue in warehouse, without the payment of the duties, for a period of three years from the date of the importation, and that the same may be withdrawn for consumption on payment of the duties and charges. 10 id. 271.

Increased revenue being required, Congress passed the act of the 5th of August, 1861, the fifth section of which enacted that goods actually on shipboard and bound to the United States, and all goods on deposit in warehouses and public stores at the passage of that act, shall be subject to pay such duties as were provided by law before and at the time of the passage of the act. 12 id. 293.

Provision was also made by the same section that goods deposited in public store or bonded warehouse after the act should take effect and go into operation, if designed for consumption here, must be withdrawn therefrom, or the duties thereon be paid, in three months after the same are deposited; and that goods designed for exportation and consumption in foreign countries may be withdrawn by the owner at any time before the expiration of three years after the same are deposited, — such goods, if not withdrawn in three years, to be regarded as abandoned to the government, and to be disposed of as therein provided.

Three months were allowed to owners within which to withdraw their goods from the public store or warehouse, or to pay the liquidated duties; but the further provision was, that, if they neglect to improve that privilege within three months from the time of the deposit, the goods may be withdrawn and entered

for consumption at any time within two years of the time of their deposit, upon the payment of the legal duties, with an addition of twenty-five per cent thereon.

Events beyond control made it necessary in that period that taxes should follow taxes in rapid succession; but it cannot be admitted that the taxes were any the less obligatory because the exactions were more frequent and at higher rates than in former years. None of these regulations amounted to a contract between the government and the importer, and of course they were at all times subject to modification, alteration, or repeal; but they show to a demonstration that it never was the policy of Congress to allow the owner, importer, or consignee to deposit imported goods in the public stores or warehouses without the payment of duties for an indefinite period of time, or for any great length of time, without requiring the depositor, when he withdrew the same for consumption, to pay an additional duty for the privilege.

Four months, less three days, of the year allowed by the prior act remained in which the goods might be withdrawn for consumption on payment of the liquidated duties and charges, without being subjected to any additional exaction, which gave full scope and opportunity for the corresponding privilege conferred by the twenty-sixth section of the subsequent act. 14 id. 8; 16 id. 269.

Examined, as the question should be, in the light of these suggestions and the antecedent legislation of Congress, it is clear that the new law supposed to be applicable to the case is not repugnant to the prior law, and that there is no error in the record.　　　　　　　　　　　*Judgment affirmed.*