UNITED STATES *v.* B. HOLMAN, INC. (No. 4323)[1]

---
[1] C. A. D. 164.

United States Court of Customs and Patent Appeals, April 1, 1941

*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel G. McGrath*, special attorney, of counsel), for the United States.
*Barnes, Richardson & Colburn* (*Samuel M. Richardson*, of counsel) for appellee.

[Oral argument February 4, 1941, by Mr. Samuel M. Richardson and Mr. McGrath]

Before, GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges [2]

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division.

Merchandise, consisting of goatskins, exported from China and imported into the United States at the port of New York under the Tariff Act of 1922, was entered "for warehousing" and deposited in a bonded warehouse under the provisions of that act. It was originally assessed for duty by the collector as "Furs dressed on the skin" at 25 per centum ad valorem *under paragraph 1420 of the Tariff Act of 1922*, and the two entries (W. H. B. 17663 and W. H. B. 20789) were liquidated under that act on *April 2, 1930*.

The importer duly protested the collector's classification, claiming that the merchandise covered by entry W. H. B. 17663 was dutiable alternatively at 10 or 15 per centum ad valorem under paragraph 1420, 20 per centum ad valorem under paragraph 1431, or 20 per centum ad valorem under paragraph 1459 of the *Tariff Act of 1922*, or that it was free of duty under paragraph 1579 or paragraph 1666 of *that act*, and that the merchandise covered by entry W. H. B. 20789 was dutiable alternatively at 10 or 15 per centum ad valorem under paragraph 1420, 10 per centum ad valorem under paragraph 1457, or 10 or 20 per centum ad valorem under paragraph 1459 of the *Tariff*

---

[2] LENROOT, Judge, took no part in the consideration or decision of this case.

*Act of 1922*, or that it was free of duty under paragraph 1579 or paragraph 1666 of *that act*.

The merchandise was withdrawn from bonded warehouse and entered for consumption after the enactment of the Tariff Act of 1930, and became dutiable under that act by virtue of the provisions of sections 315 and 557 thereof.

So that the issues in the instant case may be better understood, the following facts, although not here directly involved, may with propriety, we think, be related at this point: It appears from the record in the instant case, together with the record in the case of *B. Holman, Inc.* v. *United States* (an appeal from a judgment of the United States Customs Court, First Division), Suit 4093, 29 C. C. P. A. (Customs) 1, C. A. D. 163, decided concurrently herewith, that the trial of the issues raised by the importer's protests against the *collector's liquidations of April 2, 1930, under the Tariff Act of 1922*, was continued several times by the trial court, with the consent of counsel for the parties, to await final decisions in pending cases "involving similar issues"; that, on April 22, 1936, the importer moved to amend those protests by adding thereto claims that the involved merchandise was properly dutiable at either 10 or 20 per centum ad valorem under paragraph 1558 of the *Tariff Act of 1930*, or that it was free of duty under paragraph 1681 of *that act;* that the motions to amend were denied, the trial court stating, in substance, that as the collector "has not yet liquidated" the involved entries under the Tariff Act of 1930 "the amendments are not timely"; that thereafter, on June 2, 1936, the issues raised by those protests came on for trial, and, for reasons not of importance here, counsel for the importer moved that the case be continued until October of that year; that the motion was overruled by the court, and the cause ordered submitted; and that counsel for the importer submitted no evidence. The protests were overruled, and judgment was entered accordingly. In its decision, the court again referred to the motions to amend the protests, stating, in substance, that as *section 514* of the *Tariff Act of 1930* requires that protests be filed within 60 days *after but not before* "liquidation or reliquidation," the granting of the motions "would in effect be permitting the filing of new protests before reliquidation," which is not provided for by the statute."

It appears in the instant case from stipulations entered into by counsel for the parties that the merchandise covered by entry W. H. B. 20789 "was withdrawn from bonded warehouse for consumption [under the Tariff Act of 1930], and duty paid thereon on August 18, 1930"; that the merchandise covered by entry W. H. B. 17663 "was withdrawn from bonded warehouse for consumption [under the Tariff Act of 1930] and duty paid thereon on July 6, 1933, and January 17, 1934, respectively"; that, as to entry W. H. B. 20789, "there appears

on the inside of the entry paper the following: 'July 30, 1931, (Initials) JJS. No change under Act of 1930. Ver. (Initials) WHM. (Initials) MMG.' " (the letters "Ver.," apparently intended as an abbreviation for the word "verified," and the initials "WHM" and "MMG" appear on the entry immediately beneath the notation "No change under Act of 1930"); that the "initials JJS, WHM, and MMG were placed thereon by the following customs officials, holding the following positions:

| Initials | Name | Position |
|----------|------|----------|
| JJS_____ | J. J. Smith_____ | Liquidator, Collector's Office. |
| WHM___ | W. H. Morehead_____ | Liquidator, Comptroller's Office. |
| MMG___ | M. McGann_____ | Clerk, Warehouse Division, Collector's Office. |

that, as to entry W. H. B. 17663, "there appears on the inside of the entry paper the following: 'JAN. 29, 1931 (Initials) JJM. No change, Act of 1930. (Initials) LH (Initials) JN.' " (the initials "LH" and "JN" appear on the entry immediately beneath the notation "No change, Act of 1930"); that the "initials JJM, LH, and JN were placed thereon by the following customs officials, holding the following positions:

| Initials | Name | Position |
|----------|------|----------|
| JJM____ | Joseph J. McGrath_____ | Liquidator, Collector's Office. |
| LH_____ | Lazarus Hamburger_____ | Liquidator, Comptroller's Office. |
| JN_____ | J. Newman_____ | Clerk, Warehouse Division, Collector's Office. |

that "there has never been any posting in the Custom House" at the port of New York of "any liquidation or reliquidation" of either of the involved entries *under the Tariff Act of 1930;* that the importer made a written demand upon the collector on March 9, 1936, "either to reliquidate or repost a liquidation under the Tariff Act of 1930" of each of the involved entries; that, on March 20, 1936, the collector of customs at the port of New York refused to comply with the importer's demand; and that the involved protests (No. 867701–G, entry W. H. B. 17663, and No. 867698–G, entry W. H. B. 20789) were filed within 60 days after such refusal.

It appears from the entry papers, under "SUMMARY OF EXAMINATION AND APPRAISEMENT," that, on January 8, 1931, the collector requested the appraiser to "Please report advisory classification [of the merchandise covered by entry W. H. B. 17663] under Tariff Act of 1930"; that, on July 22, 1931, the collector made a similar request as to the merchandise covered by entry W. H. B. 20789; and that the appraiser complied with those requests.

It appears from the invoices that the appraiser advised the collector that the involved merchandise was dutiable as "Dressed Fur Skins" at 25 per centum ad valorem under paragraph 1519 (a) of the Tariff Act of 1930.

It is contended in each of the involved protests that the merchandise is not dutiable as assessed by the collector but is properly dutiable alternatively at 10 or 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, or is free of duty under paragraph 1681 of that act. Protest was also made against the refusal of the collector to "reliquidate" the involved entries under the Tariff Act of 1930, as required by section 505 of the Tariff Act of 1930 and article 820 (h) of the Customs Regulations of 1931 which were then in full force and effect. It is also stated in each of the protests that if the collector's action in endorsing on the involved entries "No change Tariff Act of 1930," "which was brought to the importer's attention within 60 days of the date" of the involved protests (March 25, 1936), constitutes reliquidations of the involved entries, protest is made against such reliquidations.

The cause was originally submitted to the trial court on the stipulated facts hereinbefore set forth and motions by the Government to dismiss the involved protests on the ground that they were untimely. The court, in C. D. 218, overruled the Government's motions to dismiss, holding that, by virtue of the provisions of section 315 of the Tariff Act of 1930, the involved merchandise was dutiable under that act, and that it was the duty of the collector, under the provisions of section 505, *supra*, "to ascertain, fix, and liquidate the rate and amount of duties" assessable against such merchandise and to give notice of such liquidations in the form and manner prescribed by the Secretary of the Treasury. The court further held that the collector's refusal to post a notice of his liquidation of each of the involved entries, as required by section 505, *supra*, and article 820 (h), *supra*, was a decision, within the purview of section 514 of the Tariff Act of 1930, as to the rate and amount of duties to which the involved merchandise was subject against which the importer had a right to protest, and that as each of the involved protests was filed within 60 days after such decision, as required by section 514, *supra*, it was timely. At the request of counsel for the parties, the trial court continued the case to await a final decision by this court in the case of *B. Holman, Inc.* v. *United States, supra*. Thereafter, at the request of counsel for the parties, the cause again came on for trial, and counsel for the Government again moved that the protests be dismissed on the ground that they were untimely, and the cause was submitted on the Government's motions to dismiss and the stipulated facts hereinbefore set forth. The trial court, adhering to the views expressed in its former decision, overruled the motions to dismiss and sustained the protests, so far as

they relate to the refusal of the collector to liquidate the involved entries in the form and manner required by section 505, *supra*, and article 820 (*h*), *supra*. Judgment was entered accordingly, and the Government appealed to this court.

It is contended here by counsel for the Government that, although the involved merchandise remained in bonded warehouse until after the enactment of the Tariff Act of 1930 and was, therefore, dutiable under that act by virtue of the provisions of section 315 thereof, the collector was not required to liquidate or reliquidate the involved entries under that act because, it is argued, the rate of duty provided therein for merchandise like that here in question was the same as that provided in the Tariff Act of 1922. In support of that contention, counsel rely upon the decision of the Supreme Court in the case of *Merritt* v. *Cameron*, 137 U. S. 542, 550–551, the decision of the Board of General Appraisers (now the United States Customs Court) in the case of *D. H. Arnold* v. *United States*, T. D. 34396, 26 Treas. Dec. 659, the decision of the United States Customs Court in the case of *R. W. Cramer & Co., Inc.* v. *United States*, C. D. 110, and article 751 of the Customs Regulations of 1923 or article 830 (*k*) of the Customs Regulations of 1931. It is further contended by counsel for the Government that as the involved entries have not been liquidated or reliquidated under the Tariff Act of 1930, there is no liquidation or reliquidation, within the purview of section 514, *supra*, against which the importer might protest, and that the collector's refusal either to liquidate or reliquidate an entry or to post a bulletin notice of any liquidation or reliquidation is not a decision, nor an order or finding entering into the same, "as to the rate and amount of duties chargeable" against imported merchandise, within the purview of that section. In support of the latter contentions, counsel rely upon the decision of this court in the case of *United States* v. *Astra Bentwood Furniture Co.*, 28 C. C. P. A. (Customs) 205, C. A. D. 147.

Preliminary to a discussion of the issues in this case we deem it advisable to state that at the times (January 29 and July 30, 1931, respectively) the collector made the notations on the involved entries that there was no change in the rate of duty under the Tariff Act of 1930, the Customs Regulations of 1923 which are pertinent to the issues here were in full force and effect. The Customs Regulations of 1931 were not made effective until January 6, 1932. There being no material difference in the pertinent Customs Regulations of 1923— article 741 (*a*), (*f*), and (*g*) and the fourth paragraph of article 751— and those of 1931—articles 820 (*a*) and (*h*) and 830 (*k*)—which were in full force and effect at the time (April 22, 1936) the involved protests were filed, we shall quote and hereinafter refer only to the pertinent Customs Regulations of 1931.

Sections 315, 505, 514, and the pertinent part of section 557 of the

Tariff Act of 1930 and article 830 (*k*) of the Customs Regulations of 1931 read, respectively, as follows:

## SEC. 315. EFFECTIVE DATE OF RATES OF DUTY.

On and after the day when this Act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this Act and to no other duty upon the entry or the withdrawal thereof: *Provided*, That when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall, except as provided in section 562 of this Act (relating to manipulating warehouses), be levied and collected upon the weight of such merchandise at the time of its entry. [With the exception of the clause "except as provided in section 562 of this Act (relating to manipulating warehouses)" section 319 of the Tariff Act of 1922 contained identical provisions.]

## SEC. 505. PAYMENT OF DUTIES.

The consignee shall deposit with the collector, at the time of making entry, unless the merchandise is entered for warehouse or transportation, or under bond, the amount of duty estimated to be payable thereon. Upon receipt of the appraiser's report and of the various reports of landing, weight, gauge, or measurement the *collector shall ascertain, fix, and liquidate* the rate and amount of duties to be paid on such merchandise as provided by law *and shall give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury*, and collect any increased or additional duties due or refund any excess of duties deposited *as determined on such liquidation*. [Italics ours.] [Section 504 of the Tariff Act of 1922 contained identical provisions.]

## SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

SEC. 557. ENTRY FOR WAREHOUSE—WAREHOUSE PERIOD—DRAW-BACK.

Any merchandise subject to duty,' with the exception of perishable articles and explosive substances other than firecrackers, may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee. Such merchandise may be withdrawn, at any time within three years (or ten months in the case of grain) from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal * * *. [Similar provisions, so far as the issues here are concerned, were contained in section 557 of the Tariff Act of 1922.]

Art. 830. Change in classification—Higher or lower rate—Effective date.—

\* \* \* \* \* \* \*

(k) When the rate of duty is changed by act of Congress or by proclamation of the President, entries covering the classes of goods enumerated in section 315 should be liquidated or reliquidated, as the case may be, on the basis of the new rate. The reliquidation in such cases shall be made in the district where the merchandise is in customs custody on the date of the change of rate.

Although the involved merchandise was originally imported under the Tariff Act of 1922, it was withdrawn from bonded warehouse and entered for consumption after the enactment of the Tariff Act of 1930, and, pursuant to the provisions of section 315 of that act, *supra*, was subject to the duties imposed by that act "and to no other duty." Had the merchandise been entered for consumption under the Tariff Act of 1922, it would not only have been dutiable under that act but; by virtue of the so-called "saving clauses" contained in section 651 (c) of the Tariff Act of 1930, all rights and liabilities created by such importations and entries would have continued and been enforcible *only* under the provisions of the Tariff Act of 1922 and the regulations and rules of procedure adopted in accordance therewith. See *United States* v. *Browne & Roese*, 6 Ct. Cust. Appls. 382, T. D. 35922; *Constance* v. *United States*, 11 Ct. Cust. Appls. 435, T. D. 39436; *Brown & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 93, T. D. 40026; *Scaramelli* v. *United States*, 12 Ct. Cust. Appls. 134, T. D. 40056; *United States* v. *Neuman & Schwiers Co.*, 12 Ct. Cust. Appls. 207, T. D. 40224; *Penick & Ford (Ltd., Inc.)* v. *United States*, 12 Ct. Cust. Appls. 218, T. D. 40228; *United States* v. *Southern Paper Co., Ltd.*, 12 Ct. Cust. Appls. 250, T. D. 40265; *Woolworth Co.* v. *United States*, 13 Ct. Cust. Appls. 176, T. D. 41037; *James Akeroyd & Son* v. *United States*, 19 C. C. P. A. (Customs) 249, T. D. 45341; *Mengel Co.* v. *United States*, 20 C. C. P. A. (Customs) 399, T. D. 46232; *L. Sandoz Vuille, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 303, T. D. 47349; *C. J. Tower & Sons* v. *United States*, 25 C. C. P. A. (Customs) 415, T. D. 49496. The Congress certainly did not intend, however, that rights and liabilities created by the entry for consumption of imported merchandise under the Tariff Act of 1930 should be enforcible under the provisions of the Tariff Act of 1922.

On the contrary, we think it is clear from the provisions of sections 315, 505, 514, 515, and 557 of the Tariff Act of 1930 that it was the congressional intent that all such rights and liabilities should be enforcible under the provisions of that act and the rules and regulations of procedure adopted in accordance therewith. See *May Co.* v. *United States*, 12 Ct. Cust. Appls. 266, T. D. 40270; *Diana et al.* v. *United States*, 12 Ct. Cust. Appls. 290, T. D. 40295; *Kee Co. et al.* v. *United States*, 13 Ct. Cust. Appls, 105, T. D. 40943; *Casazza & Bro.* v. *United States*, 13 Ct. Cust. Appls. 627, T. D. 41481; *United States* v. *T. J. McGrath & Co.*, 16 Ct. Cust. Appls. 97, T. D. 42755.

Section 557, *supra*, provides, among other things, as did section 557 of the Tariff Act of 1922, that merchandise entered for warehousing and deposited in a bonded warehouse may be withdrawn, with certain exceptions not of importance here, "for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal."

Section 505, *supra*, provides that "the collector shall *ascertain, fix, and liquidate* the rate and amount of duties to be paid on" imported "merchandise as provided by law and shall give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury." [Italics ours.] By the provisions of that section, the collector is not merely required to ascertain and fix the rate and amount of duties to be paid on imported merchandise, but he must also *liquidate* the rate and amount of duties to be paid on such merchandise and give notice of "*such liquidation* in the form and manner prescribed by the Secretary of the Treasury." [Italics ours.]

"Liquidation," as defined by article 820 (*a*) of the Customs Regulations of 1931, is "*the final computation or ascertainment of the duties accruing*" on merchandise imported under the Tariff Act of 1930. [Italics ours.]

Article 820 (*h*) of those regulations, prescribed by the Secretary of the Treasury pursuant to the provisions of section 505, *supra*, reads:

Art. 820. Definition of liquidation—Procedure.—

\*    \*    \*    \*    \*    \*    \*

(*h*) When the entry is returned to the collector after the assessment of duty has been verified by the comptroller, the liquidation shall be deemed completed. *The entry will then be immediately stamped with the word "liquidated" and the date of stamping, which is the legal evidence of liquidation, and on the same day a bulletin notice thereof (customs Form 4333) must be posted in a conspicuous place in the customhouse for the information of importers.* [Italics not quoted.]

It appears from the record in the case at bar that the collector requested the appraiser to "Please report advisory classification" of the merchandise covered by each of the involved entries under the Tariff Act of 1930; that the appraiser complied with that request; that the collector adopted the appraiser's advisory classification; and that the collector's classification and determination of the rate

and amount of duties assessible against the involved merchandise was verified by the Comptroller of Customs, as required by section 523 of the Tariff Act of 1930. It will be observed, therefore, that, although the collector actually ascertained, fixed, and *liquidated*—"liquidation" being "the final computation or ascertainment of the duties accruing" on imported merchandise, article 820 (*a*), *supra*—the rate and amount of duties to be paid on the involved merchandise under the Tariff Act of 1930, he did not stamp either of the entries with the word "liquidated," nor did he give notice to the importer of his liquidations in the form and manner prescribed by the Secretary of the Treasury, as required by section 505 and article 820 (*h*), *supra*.

In the case of *United States* v. *Astra Bentwood Furniture Co.*, *supra*, it was held that the provisions of section 505, *supra*, were mandatory and that collectors of customs were required by those provisions to give notice of liquidation in the form and manner prescribed by the Secretary of the Treasury, and that the statute gave no discretion to the collectors of customs either as to the form or manner of such notice. We further held in that case that the provisions of article 820 (*h*), *supra*, requiring collectors of customs to stamp liquidated entries with the word "liquidated" and to post bulletin notices of such liquidations "in a conspicuous place in the customhouse for the information of importers" had the force and effect of law; that when the provisions of section 505 and article 820 (*h*) were considered in connection with the provisions of section 514, *supra*, (the protest section) it was evident that "the sixty-day period after the collector's liquidation within which an importer might protest, as provided in section 514" was not intended by the Congress to "commence to run until notice of such liquidation was given by the collector to the importer in the *form and manner* prescribed by the Secretary of the Treasury'" [italics quoted]; that section 514 did not authorize the filing of a protest against the refusal of the collector to comply with the mandates of section 505 and article 820 (*h*); and that it was the duty of the collector "to complete his liquidation of the entry [there involved] in the manner provided by law so that the importer, if it sees fit to do so, may protest the liquidation within the time prescribed by section 514."

We are unable to find anything in the Tariff Act of 1930 to indicate that the Congress intended that section 505, *supra*, should not apply to all imported merchandise entered for consumption under that act, including all such as was made dutiable thereunder by virtue of the provisions of section 315, *supra*. Had the Congress intended that consumption entries covering merchandise made dutiable under the Tariff Act of 1930 by the express provisions of section 315 might be liquidated or the rate and amount of duties ascertained and fixed in

any manner other than that provided in section 505 it certainly would have said so. So, whatever the law may have been prior to the enactment of the provisions of section 505, *supra*, which first appeared in the Tariff Act of 1922, under those provisions and the provisions of section 514, *supra*, all decisions of the collector involved in the ascertaining and fixing of the rate and amount of duties chargeable against imported merchandise entered for consumption are merged in and become a part of a legal liquidation, and it is a legal liquidation only, so far as the issues here are concerned, against which a protest will lie.

It is contended by counsel for appellee that the involved goatskins are free of duty as "fur skins * * * undressed" under paragraph 1681, *supra*, and, in support of that contention, it is argued that they are similar, for tariff purposes, to certain dogskins which, in the case of *United States* v. *Arnhold & Co., Inc., et al.*, 27 C. C. P. A. (Customs) 135, C. A. D. 74, were held, on the record there presented, to be not dutiable as "dressed fur skins" at 25 per centum ad valorem under paragraph 1519 (a) of the Tariff Act of 1930 as assessed by the collector at the port of New York, but free of duty as "fur skins * * * undressed" under paragraph 1681 of that act.

Counsel for appellee present the pertinent inquiry: How can that issue be properly raised for adjudication?

Should it be held that the collector is not required to liquidate the involved entries in accordance with the provisions of section 505, *supra*, and to give notice to the importer of such liquidation in the form and manner prescribed by the Secretary of the Treasury, which he has refused to do, then the importer cannot protest the collector's assessment of the rate and amount of duties against the involved merchandise because there has been no legal liquidation. Such a holding would vest the power of finally determining the dutiable status of imported merchandise made subject to the provisions of the Tariff Act of 1930 by virtue of sections 315 and 557, *supra*, exclusively in the collectors of customs; it would deprive the importer in the instant case and importers in all similar cases of the right to a judicial review, provided by section 515, *supra*, of the collectors' assessment of the rate and amount of duties against such merchandise; and it would be plainly contrary to both the letter and spirit of the provisions of sections 505, 514, 515, and 557, *supra*.

We are of opinion, therefore, that it was the duty of the collector to "ascertain, fix, *and liquidate* the rate and amount of duties to be paid on" the involved merchandise as provided by section 505, *supra* [Italics ours], and to "give notice of such liquidation in the form and manner prescribed" by the Secretary of the Treasury; and that if article 830 (*k*), *supra*, was intended to be understood as meaning that the collector is not required to liquidate all entries for consumption

covering merchandise made subject to the provisions of the Tariff Act of 1930 by the provisions of sections 315 and 557, *supra*, it is, to that extent, contrary to law and void.

In the case of *Merritt* v. *Cameron*, 137 U. S. 542, decided December 22, 1890, relied upon here by counsel for the Government, it appears that the merchandise there involved was imported on July 26, 1880, and entered under bond "for warehousing"; that on August 4 and September 10, 1880, respectively, it was withdrawn from warehouse and entered for consumption; that the entry was liquidated by the collector on August 20, 1880; and that the importer protested the collector's liquidation on September 10 of that year. The sole issue before the court, as stated in the opinion, "Was [whether] the protest of the importers [was] made within the time prescribed by section 2931 of the Revised Statutes," which provided that protests should be filed within 10 days after the collector's liquidation. Counsel for the importers argued that the collector was required by section 2970 of the Revised Statutes then in force to liquidate the entries there involved at the time of the withdrawal of the merchandise from warehouse. The court there quoted section 2970 as follows:

Any merchandise deposited in bond in any public or private bonded warehouse may be withdrawn for consumption within one year from the date of original importation on payment of the duties and charges to which it may be subject by law at the time of such withdrawal; and after the expiration of one year from the date of original importation, and until the expiration of three years from such date, any merchandise in bond may be withdrawn for consumption on payment of the *duties assessed on the original entry and charges;* and an additional duty of ten per centum of the amount of *such duties and charges.* [Italics not quoted.]

In holding in that case that the collector might liquidate warehouse entries at any time, and that protests were required by section 2931, *supra*, to be filed within 10 days after liquidation, the Supreme Court said:

In our opinion that section [2970] was intended to provide for cases in which a change in the rate of duty had been made by statute while the merchandise was in the bonded warehouse. *Fabbri* v. *Murphy*, 95 U. S. 191; act of March 14, 1866, 14 Stat. 8, c. 17. The first clause of the section means simply that if there has been a change in the rate of duty after the merchandise has been entered in bond, and the withdrawal of the merchandise takes place afterwards, and within one year from the date of the importation, the duties to be paid are such as are fixed by the law in force at the date of the withdrawal. The second clause of section 2970 provides that if the merchandise remain in the bonded warehouse more than one year it may be withdrawn for consumption at any time within three years upon the payment of the duties and charges assessed upon the original entry, and ten per centum in addition. The phrase "duties assessed on the original entry," etc., evidently means the duties on the original entry as finally ascertained and liquidated, within the meaning of those terms, as used in section 2931. In either case, if the statute changing the rate of duties goes into effect after the liquidation of the original entry, a reliquidation must necessarily take place. The two clauses of the section differ in one respect only, viz., in a ten per cent

increase of duties, where the merchandise remains in the warehouse more than one year, and is withdrawn within three years from the date of importation. This construction renders the two sections of the statute harmonious.

The tariff act in effect at the time the merchandise there involved was entered "for warehousing" was still in effect at the time the merchandise was withdrawn for consumption, and there was no change in the rate of duty applicable to it. Accordingly, there was no occasion for a reliquidation of the entry there in question. It is apparent, therefore, that the court was not called upon to decide, and it did not decide, whether, had a new tariff act become effective during the time the merchandise was in warehouse, it would have been necessary for the collector to liquidate the entry under the new act in order to determine the rate and amount of duty applicable to such merchandise. The court merely stated the obvious; that is, that "if the statute changing the rate of duties goes into effect after the liquidation of the original entry, a reliquidation must necessarily take place." In support of its statement that section 2970, *supra*, "was intended to provide for cases in which a change in the rate of duty had been made by statute while the merchandise was in the bonded warehouse," the court cited the case of *Fabbri* v. *Murphy*, 95 U. S. 191.

The opinion in the *Fabbri* v. *Murphy* case, *supra*, discloses that the merchandise there involved was entered "for warehousing" in November 1869 under the Tariff Act of 1866; that the entry was liquidated and the merchandise assessed with duty at 3 cents per pound under that act; that the merchandise remained in bonded warehouse until after the enactment of the Tariff Act of 1870, and became dutiable under that act at 1¾ cents per pound; and that on March 20, 1871, the collector liquidated the entry under the provisions of that act and assessed the merchandise with duty at 1¾ cents per pound, and an additional 10 per centum "on the previous duty imposed under the act of the 14th of March, 1866" by virtue of the provisions in the last clause of section 2970, *supra*. No question was raised in the Supreme Court in that case either as to the right of the collector to liquidate the entry under the provisions of the Tariff Act of 1870 or as to the correctness of his assessment of duty at the rate of 1¾ cents per pound under that act. The sole issue there raised by the importer was whether the collector properly assessed the 10 per centum additional duty, the importer claiming that section 2970 had been repealed by the provisions contained in the first clause of section 26 of the Tariff Act of 1870 (16 Stat. 269), which, the court stated, provided, in substance, that merchandise remaining in bonded warehouse on the effective date of that act "shall be subjected to no other duty upon the entry thereof for consumption than if the same were imported after that day." The court held that the last clause of section 2970 of the Revised Statutes, hereinbefore quoted, was not repealed by implication by the first clause of section 26 of the act of 1870, and

that, as the merchandise had remained in bonded warehouse more than 1 year and less than 3 years, the 10 per centum additional duty was properly assessed by the collector. (Section 2970 of the Revised Statutes was repealed by section 20 of the Customs Administrative Act of June 10, 1890, 26 Stat. 140—*Mosle et al.*, v. *Bidwell*, 130 Fed. 334). It will be observed, therefore, that in neither the *Merritt* case nor the *Fabbri* case was it held, even under the statutory provisions there involved, which differ materially from those here under consideration, that, where merchandise remained in bonded warehouse until after the effective date of a new tariff act, the collector was not required to liquidate the entry under the new act unless there was a change in the rate of duty applicable to such merchandise.

In the case of *D. H. Arnold* v. *United States, supra,* relied upon here by counsel for the Government, it appears that certain merchandise was imported and entered "for warehousing" under the Tariff Act of 1897; that the entry was liquidated by the collector under the provisions of that act; that the merchandise remained in the warehouse until after the enactment of the Tariff Act of 1909; and that the collector "reliquidated" the entry under the provisions of the latter act. The Board of General Appraisers (now the United States Customs Court) held that as the rate of duty applicable to such merchandise under the Tariff Act of 1897 had not been changed by the provisions of the act of 1909, the collector's reliquidation of the entry was illegal and void. In so holding, the board relied upon the decision in the case of *Merritt* v. *Cameron, supra,* and T. D. 33949 in which it was stated by the Assistant Secretary of the Treasury that, in the opinion of "the department," there was nothing in the Tariff Act of 1913 which required the collectors of customs to reliquidate entries covering merchandise remaining in bonded warehouse at the time that act became effective "where the rates of duty * * * are the same as under the tariff act of 1909."

We deem it unnecessary either to discuss the decision in that case or to express an opinion as to the soundness of the conclusion therein reached. It is sufficient to say that there were no provisions in the Tariff Act of 1909 comparable to the provisions of section 505, *supra,* and that for that reason, if for no other, the decision in that case is not authority for holding that the collector is not required to liquidate the involved entries under the provisions of the Tariff Act of 1930.

It appears from the decision in the case of *R. W. Cramer & Co., Inc.* v. *United States,* C. D. 110 (hereinafter referred to as C. D. 110), also relied upon by counsel for the Government, that certain merchandise was entered "for warehousing" on June 28, 1929, under the Tariff Act of 1922; that the collector liquidated the entry on February 13, 1930, and assessed the merchandise with duty at 35 per centum

ad valorem under paragraph 1313 of the Tariff Act of 1922; that the importer protested the collector's liquidation on April 8, 1930, claiming that the merchandise was not dutiable as assessed but that it was properly dutiable at 5 cents per pound and 20 per centum ad valorem under paragraph 1305 of that act; that the merchandise remained in bonded warehouse until after the enactment of the Tariff Act of 1930 and, by virtue of the provisions of sections 315 and 557, *supra*, became dutiable under that act; that "on July 29, 1931, the entry was reliquidated 'No Change' under the Tariff Act of 1930 *and this reliquidation was not posted*" [italics ours]; that on December 17, 1935, the United States Customs Court, Second Division, sustained the protest in the case of *R. W. Cramer & Co., Inc.* v. *United States*, Abstract 32963 (hereinafter referred to as Abstract 32963) holding that the merchandise was dutiable at 5 cents per pound and 20 per centum ad valorem *under paragraph 1305 of the Tariff Act of 1922*, and judgment was entered accordingly; that the collector "refused and failed to follow the judgment of the United States Customs Court" in Abstract 32963, and also refused to post notice of his "reliquidation under the Tariff Act of 1930"; and that within 60 days thereafter the importer protested the refusal and failure of the collector "to follow" the judgment of the United States Customs Court and also his refusal to "post the reliquidation under the Tariff Act of 1930."

On that state of the record, the United States Customs Court, Second Division, on February 27, 1939, held, on the authority of *Merritt* v. *Cameron* and *D. H. Arnold* v. *United States*, *supra*, that as the rate of duty assessed by the collector under the Tariff Act of 1922 and that claimed by the importer in its protest under that act were not changed by the provisions of the Tariff Act of 1930, the collector had no authority to liquidate the entry there involved under the Tariff Act of 1930; that his liquidation under that act was "without force and effect"; and that "*the status of the instant merchandise for tariff classification purposes is necessarily reverted to that fixed by the decision of this court in Abstract 32963, wherein it was held that the said merchandise was properly dutiable at the rate of 5 cents per pound and 20 per centum ad valorem under paragraph 1305 of the Tariff Act of 1922.*" [Italics not quoted.] The court concluded its decision by stating that "the collector of customs is hereby ordered and directed to execute the judgment of this court issued on December 17, 1935, * * * in * * * Abstract 32963, and to reliquidate the entry * * * as directed in said judgment. Judgment will be rendered accordingly."

For the reasons hereinbefore stated, we are unable to concur in the holding of the court in that case that the collector is without authority to liquidate consumption entries under the Tariff Act of 1930 covering

merchandise made dutiable under that act by virtue of the provisions of sections 315 and 557, *supra*.

The difficulties confronting collectors of customs, importers, and the United States Customs Court, which have resulted from prior holdings that collectors of customs are neither required nor authorized to liquidate entries like those here involved under the Tariff Act of 1930, are plainly illustrated by the facts and circumstances set forth in C. D. 110, *supra*, and the results of the decision in that case.

As hereinbefore noted, the collector in that case did not post notice of his liquidation of the entry there involved under the Tariff Act of 1930 as required by section 505 and article 820 (*h*), *supra*. There was no way, therefore, that the importer could raise the question of the dutiable status of the merchandise under that act, and, although the issues raised by the protest filed under the Tariff Act of 1922 had become moot (see *B. Holman, Inc.* v. *United States, supra*), the trial court, being of opinion that the collector had no authority to liquidate the entry under the Tariff Act of 1930, proceeded to try the issues raised by that protest and held that the merchandise was dutiable at 5 cents per pound and 20 per centum ad valorem *under paragraph 1305 of the Tariff Act of 1922.*

Assuming that it was the duty of the collector to execute the judgments of the trial court in Abstract 32963 and C. D. 110, *supra*, and assess the merchandise with duty at 5 cents per pound and 20 per centum ad valorem *under paragraph 1305 of the Tariff Act of 1922,* he could not do so without ignoring the plain provisions of sections 315 and 557, *supra*, which required that the merchandise be assessed with duty *under the Tariff Act of 1930;* nor could he liquidate the entry as required by section 505 and article 820 (*h*), *supra*, and assess the merchandise with duty under the Tariff Act of 1930 without violating each of those judgments.

Such unhappy situations can be avoided in the future by the liquidation of all entries like those here involved as required by section 505, *supra*, and the giving of notice to importers of such liquidations in the form and manner duly prescribed by the Secretary of the Treasury. Proper protests duly filed against such liquidations will present "actual controversies," not moot questions, for judicial determination by judgments "which can be carried into effect" by collectors of customs.

We are in accord with the holding of the trial court in the instant case that *it is the duty* of the collector to liquidate the involved entries under the Tariff Act of 1930 in the manner provided by law so that the importer, if it sees fit to do so, may protest such liquidations within the time prescribed by section 514, *supra*. However, we are unable to agree that the provisions of section 514 authorize the filing of protests against the refusal of the collector to liquidate the involved

entries under the Tariff Act of 1930 in the form and manner provided by law.

We must hold, therefore, that as the collector has not liquidated the involved entries under the Tariff Act of 1930 as required by law, the involved protests are untimely and, accordingly, should have been dismissed by the trial court. *United States* v. *Astra Bentwood Furniture Co., supra.*

For the reasons stated, the judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.